UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION<br>    280 E. First Ave.<br>    Broomfield, CO 80038<br><br>        Plaintiff,<br><br>v.<br><br>NOW HEALTH GROUP, INC.<br>    244 Knollwood Dr.<br>    Bloomingdale, IL 60108<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Defendant, NOW Health Group, Inc. ("NOW") hereby removes this action filed by plaintiff Clean Label Project Foundation ("CLP") from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia.

This Court has original jurisdiction over this lawsuit, and removal is proper. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between CLP and NOW and the relief sought exceeds $75,000 excluding interest and costs. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because CLP's operative complaint necessarily involves actually disputed and substantial federal issues, including whether the products at issue are adulterated within the meaning of federal law and regarding the federal government's regulation of the selling, marketing, and labeling of prenatal vitamins as dietary supplements. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

16037306

## TIMELINESS OF REMOVAL

1. Plaintiffs CLP and GMO Free USA dba Toxin Free USA filed this action in the Superior Court of the District of Columbia on September 16, 2020. *See* Exhibit 1, Complaint. Plaintiffs served the Complaint on October 19, 2020. *See* Exhibit 2, Proof of Service. The Superior Court granted CLP's motion to dismiss GMO Free as a co-plaintiff and to file an amended complaint on December 21, 2020. A copy of the First Amended Complaint ("FAC") is attached as Exhibit 3. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the remainder of the Superior Court case file (including all documents other than the Complaint and Proof of Service) is attached as Exhibit 4. NOW's response to the FAC is due on January 8, 2021.

2. This Notice of Removal is timely. *See* 28 U.S.C. § 1446(b). It is filed within 30 days of service of the FAC, which was filed by court order on December 21, 2020. Further, footnote 14 on page 7 of both the original and amended complaints states that the amount in controversy does not exceed $75,000. In response to emails sent to CLP's counsel ON November 30 and December 18, 2020 (incorporated herein by reference), CLP has refused to disclaim the amount in controversy is less than $75,000. CLP failed to respond to NOW's counsel's specific questions whether (a) CLP is disclaiming any intent to seek the remedies listed in DC Code 28-3905(k)(2)(A), (C), (E), and (F), and (2) CLP took the position that the cost of injunctive relief, corrective advertising, and attorneys' and experts' fees will total less than $75,000. By failing to respond to the requests, a reasonable person would conclude that the FAC's claim for relief does in fact exceed $75,000 and that diversity jurisdiction exists.

## NATURE OF ACTION

3. Since 1968, NOW has been a recognized leader and innovator in the natural products industry. NOW is incorporated and headquartered in Illinois. FAC ¶ 27. Among other

things, it sells dietary supplement products regulated by the Food and Drug Administration ("FDA"). NOW adheres to the Good Manufacturing Practices ("GMP") regulations of FDA and certification programs, including that of Natural Products Association, a trade organization. Both programs lay the foundation for reproducible dietary supplement quality and ensure that responsible manufacturers such as NOW have appropriate quality control measures in place. NOW has additional certifications for its products. *See generally* https://www.nowfoods.com/now/about-now/seals-certifications.

4. CLP purports to be a non-profit organization bringing "truth and transparency to food and consumer products labeling." FAC ¶ 156. CLP is found in Colorado, not the District of Columbia. *Id*. page 1.

5. CLP alleged that, in **2018**, CLP "caused the purchasing of" over 200 prenatal vitamin products in order to test their levels of purity and folic acid. *Id*. ¶¶ 10, 26, 120-22. The FAC alleges that the products CLP caused to be purchased in 2018 were shipped to an undisclosed laboratory for testing. *Id*. ¶¶ 26, 120-22. Of those products, three were allegedly sold by NOW – Super Nutrition SimplyOne Prenatal (90 count), Super Nutrition Prenatal Blend (180 count), and Super Nutrition SimplyOne Prenatal (30 count) (collectively "Products" or "NHG Products"). *Id*. ¶¶ 9, 26, 123.[1]

6. CLP contends that the Products were "under-formulated" and adulterated with respect to folate/folic acid and adulterated with respect to "quantifiable amounts of lead, cadmium, and mercury." *Id*. page 1 & ¶¶ 74-75, 106-09.[2] It alleges that the label for **one** of the

---

[1] NOW was not selling those Products in 2018. It purchased certain assets, but not the liabilities, of the company that sold the Products. The FAC does not allege that the Products were purchased by CLP in the District of Columbia.

[2] The bulk of the prolix FAC consists of generalized allegations (¶¶ 32-98) about the benefits of folate/folic acids and harm from lead, cadmium, and mercury.

Products – Super Nutrition SimplyOne Prenatal (90 count) – claimed it contained 1000mcg/serving of folate/folic acid but the test results showed 648.7mcg/serving. *Id*. ¶ 123. While CLP alleges that this product was "under-formulated" but that 400mcg/serving is the amount recommended by the American Academy of Pediatricians and World Health Organization. *Id*. page 2 & ¶¶ 66, 115. So even if the 648.7mcg amount is accurate, it still exceeds the medically recommended dosage.[3]

7. CLP further alleged that the testing showed that: (1) Super Nutrition SimplyOne Prenatal (90 count) had a lead content of 125.11ppb and a cadmium content of 150.51ppb; (2) the Super Natural Prenatal Blend (180 count) had a lead content of 68.27ppb and a cadmium content of 130.8ppb; and (3) Super Nutrition SimplyOne Prenatal (30 count) had a lead content of 143.49ppb, a cadmium content of 231.57ppb, and a mercury content of 12.87 ppb. *Id*. ¶ 127.

8. The FAC alleges that NOW made statements in promoting its products, such as "Triple Power Multivitamins", "Better birth weight", "Reduced Fatigue", "Supports Full-Term Birth", "Stronger Baby's Bones & Energy All Day", and "Better Nutrition." *See, e.g., id*. ¶¶ 3, 4. These statements are supposedly inconsistent with the alleged under-formulation and presence of any contaminants and are "false, deceptive, and misleading. The Products at issue are not safe nor 'better nutrition.' The Products contain high levels of neurotoxins lead, cadmium, and mercury, and are under-formulated for folic acid." *Id*. ¶ 5. Underlying CLP's entire case is the assertion that the Products were "adulterated." *See, e.g., id*. page 1-2 & ¶¶ 14-16, 69, 90, 107, 109, 116, 130, 133, 136, 140, 148, 150.

---

[3] While referencing and relying on the purported laboratory test report, it was not attached to the Complaint or FAC and CLP has not provided NOW with copies in response to counsel's requests.

9. CLP asserts that NOW violated the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 *et seq*. CLP alleges that it is a "public interest organization" and purports to bring this action under D.C. Code § 28-3905(k)(1)(D) " 'on behalf of the interests of a consumer or class of consumers.' " FAC ¶¶ 21, 154, 159.

10. CLP's Prayer for Relief asks the Court to impose "remedies available under D.C. Code §28-3905(k)(2)(A-F)." FAC at 30. That subsection provides, in relevant part, that:

> Any claim under this chapter shall be brought in the Superior Court of the District of Columbia and may recover or obtain the following remedies:
>
> > (A)(i) Treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;
> >
> > (ii) Notwithstanding sub-subparagraph (i) of this subparagraph, for a violation of § 28-3904(kk) a consumer may recover or obtain actual damages. Actual damages shall not include dignitary damages, including pain and suffering.
>
> (B) Reasonable attorneys' fees;
>
> (C) Punitive damages;
>
> (D) An injunction against the use of the unlawful trade practice;
>
> (E) In representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or
>
> (F) Any other relief which the court determines proper.

11. CLP's FAC thus seeks the full panoply of relief available under the CPPA.

## THIS COURT HAS DIVERSITY JURISDICTION

12. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a). There is complete diversity between the parties. CLP is a citizen of Colorado and NOW is an Illinois corporation headquartered in Illinois.

13. The jurisdictional amount in controversy under § 1332(a) is satisfied because the amount in controversy exceeds $75,000, excluding interest and costs. This is particularly true

because CLP failed to respond to NOW's request to disclaim that the amount in controversy would be under $75,000.

14. "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Bronner ex rel. Am. Studies Assoc. v. Duggan*, 962 F.3d 596, 610 (D.C. Cir. 2020) ("[A] [litigant] need not provide an exact valuation or detailed breakdown of damages at the outset of litigation, as the claimed sum controls if apparently made in good faith." (quotation marks omitted)). Because "a district court can determine, relying on its judicial experience and common sense, that [plaintiff's] claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate." *Roe v. Michelin North Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

15. Here, CLP seeks injunctive relief under CPPA § 28-3905(k)(2)(D), requiring NOW to provide "corrective advertising." FAC at 30 (Prayer for Relief). "The value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 153 (D.D.C. 2007). NOW estimates that the cost of a corrective marketing campaign for the Products would exceed the statutory amount in controversy threshold. *See Fefferman v. Dr. Pepper Snapple Grp., Inc.*, 2013 WL 12114486, *3 (S.D. Cal. Mar. 12, 2013) (corrective advertising would include the costs for disposing of unused packaging and product, repurchasing and reclaiming unsold products from retailers, and undertaking an advertising campaign to correct alleged misrepresentations). Moreover, NOW sells product across the United States. The cost of complying with any injunction would not be limited to the District of Columbia.

16. The CPPA includes as remedies under § 28-3905(k)(2)(A) payment of treble damages or $1,500 per violation, whichever is greater, and actual damages to consumers. "Punitive damages are considered in determining the amount in controversy for purposes of diversity jurisdiction." *See Hackman v. One Brands, LLC*, No. 18-2101, 2019 WL 1440202, at *6 (D.D.C. Apr. 1, 2019). Here, CLP's requested relief is broad enough to encompass statutory and treble damages, making it more than likely the amount in controversy exceeds $75,000.

17. Apart from these costs, CLP seeks to recover its attorneys' fees and costs associated with this litigation. Because the CPPA permits recovery of attorneys' fees and costs for prevailing plaintiffs, D.C. Code § 28-3905(k)(2)(B), those fees are part of the amount in controversy. *See Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 193, 301 (D.D.C. 2013). Based on attorneys' fees awards in other consumer protection matters, an award for CLP's attorneys' fees if it prevails at trial is reasonably likely to exceed the amount in controversy requirement. *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015); *Beck v. Test Masters Educational Servs., Inc.*, 73 F. Supp. 3d 12, 20 (D.D.C. 2014) (awarding $927,707 in attorneys' fees and expenses under CPPA).

18. In addition, CLP's case will involve expert witnesses, including as to whether NOW's Products were adulterated. NOW would have rebuttal expert evidence. The costs of such experts would push the amount in controversy above $75,000.

19. Thus, the claims at issue here exceed the $75,000 jurisdictional amount. When given the opportunity to disclaim that its claims would exceed that amount, CLP failed to do so. As such, removal based on diversity jurisdiction is proper.

## THIS COURT HAS FEDERAL QUESTION JURISDICTION

20. Removal is also proper under 28 U.S.C. §§ 1441 and 1331, which give federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws or treaties of the United States," because the FAC presents substantial federal questions.

21. "Whether a case 'arises under' federal law for purposes of § 1331" depends on the well-pleaded allegations in the complaint." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). A complaint raises a substantial question of federal law warranting removal if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," even if state law creates a plaintiff's asserted cause of action." *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *see also Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986).

22. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable*, 545 U.S. at 315. "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14). This category of cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

16037306

23. Although CLP's FAC purports to assert violations of D.C. consumer protection law, the allegations make clear that this action is necessarily based on alleged failures to meet *federal* standards concerning whether a product is "adulterated" and the sale, marketing, and labeling of prenatal vitamins. This action raises substantial and actually disputed federal issues and is capable of resolution in federal court without disrupting Congress's federal-state balance. Removal is thus proper.

24. First, this action necessarily raises federal issues. "[A] federal issue is necessarily raised when the very success of the state claim depends on giving effect to a federal requirement, and the federal issue is an essential element of the state law claim." *Tantaros v. Fox News Channel, LLC*, 427 F. Supp. 3d 488, 494 (S.D.N.Y. 2019) (brackets, quotation marks, and internal citations omitted); *see also, e.g.*, *Grable*, 545 U.S. at 315 (finding federal question jurisdiction where "[w]hether Grable was given notice within the meaning of the federal statute [was] an essential element of its quiet title claim"); *Gunn*, 568 U.S. at 259 (finding federal question jurisdiction where, to prevail on a legal malpractice claim, plaintiff needed to "show that he would have prevailed in his federal patent infringement case if only [his attorneys] had timely made an experimental-use argument on his behalf"). Here, CLP alleges that NOW sold "adulterated" prenatal vitamins, in violation of D.C. Code § 48-103. *See, e.g.,* FAC pages 1-2 & ¶¶ 14-16, 69, 90, 107, 109, 116, 130, 133, 136, 140, 148, 150. But the federal government, through the Food and Drug Administration ("FDA"), is charged with regulating the sale of prenatal vitamins and their labeling. *See* 21 U.S.C. § 321(ff) (regulating "dietary supplement[s]," including products that contain vitamins, minerals, herbs, or botanicals, as food products). Pursuant to that authority, FDA establishes when a vitamin product shall be deemed adulterated, *see id.* § 342(f). D.C. law, which the FAC accuses NOW of violating, merely copies the federal

standard. *See* D.C. Code § 48-103 (repeatedly citing the federal standard). It creates no independent legal standard for assessing when a vitamin product is adulterated. Thus, to determine whether NOW's products were "injurious to health," as CLP alleges, a court will necessarily have to rely on and apply FDA's statutory and regulatory scheme and standards for adulteration. This case therefore presents a federal question. *See Organic Consumers Assoc. v. Hain Celestial Group, Inc.*, 285 F. Supp. 3d 100, 102 n.2 (D.D.C. 2018).

25. The FAC also alleges that NOW used false, misleading, and deceptive labeling and marketing in connection with the sale of the vitamins. As with adulteration, the federal government, through FDA, sets the standards for determining when food labeling is false or misleading. *See* 21 U.S.C. § 343(a). The success or failure of CLP's claims turns on establishing whether NOW met federal standards for labeling, marketing, and advertising. Indeed, the FAC shows that CLP recognizes the centrality of federal agency determinations to its claim. CLP relies on federal agency decisions and statements as establishing unsuitable content for prenatal vitamins. *See, e.g.,* FAC ¶¶ 6, 81 (citing alleged statements of the Environmental Protection Agency, FDA, and the Centers for Disease Control and Prevention). CLP's claim necessarily raises outcome determinative federal issues.

26. Second, the federal issues raised here are actually disputed. There can be no doubt that a "[c]entral point of dispute," *Gunn*, 568 U.S. at 259, will be what standards federal law and federal agencies establish and whether NOW's products at issue were in fact adulterated, falsely advertised, or deceptively marketed, based on those standards.

27. Third, the federal issues are substantial. Questions about the standards for evaluating the safety, labeling, marketing, and advertising of prenatal vitamins are not only

significant to the parties in this case, but also "significant to the federal system as a whole." *Id.* at 264.

28.     Finally, this action is capable of resolution in federal court without disrupting Congress's federal-state balance. In fact, Congress granted FDA authority to promulgate food safety and labeling regulations and recommendations with the goal of promoting national uniformity on these fronts. Federal court resolution of these issues furthers Congress's goals.

29.     The FAC, though purportedly based on a D.C. statute, is actually premised on violations of duties contained in federal law as interpreted by FDA. Removal is proper under §§ 1441 and 1331.

## REMOVAL TO THIS COURT IS PROPER

30.     Removal to this Court is proper because CLP filed this action in the D.C. Superior Court. *See* 28 U.S.C. § 1441(a) (providing that an action may be removed "to the district court of the United States for the district and division embracing the place where such action is pending"). By removing, NOW does not waive, and reserves the right to assert, defenses based on lack of personal jurisdiction, improper venue, and transfer.

## THE OTHER REQUIREMENTS FOR REMOVAL ARE MET

31.     NOW has not filed any pleadings in the Superior Court responding to the Complaint or the FAC. *See* Exhibits 1-4.

32.     NOW will give CLP prompt, written notice of the filing of this Notice of Removal, and a copy of this Notice will be filed with the Clerk of the Superior Court. *See* 28 U.S.C. § 1446(d). If CLP seeks to file a motion to remand, NOW reserves the right to supplement its arguments and evidence that establish that removal is proper. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. 81 at 89.

Dated: January 4, 2021                    Respectfully submitted,

/s/ Richard J. Oparil
Richard J. Oparil (D.C. Bar No. 409723)
ARNALL GOLDEN GREGORY LLP
1775 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
(202) 677-4908
Richard.oparil@agg.com

Attorneys for Defendant
NOW Health Group, Inc.

12

16037306

**CERTIFICATE OF SERVICE**

The undersigned served the foregoing on counsel for the plaintiff on January 4, 2021 by email:

>Travis Pittman
>Holmes Pittman Haraguehi, LLP
>P.O. Box 380
>Chester, MD 21619
>(410) 482-9505
>jtpittman@hphattorneys.com
>
>Kristen M. Ross
>Davitt, Lalley, Dey & McHale, PC
>1971 Beltline Ave., Suite 106
>Grand Rapids, MI 49525
>(202) 750-0355
>kristen.ross@dldmlaw.com

        /s/ Richard J. Oparil
        Richard J. Oparil