# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 21-cv-11-JDB ) |
| NOW HEALTH GROUP, INC., | ) ) ) |
| Defendant. | ) ) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

This case belongs in federal court. As defendant, NOW Health Group, Inc. ("NOW"), stated in its Notice of Removal, this Court has traditional diversity of citizenship and federal question jurisdiction over the single claim in the First Amended Complaint ("FAC") filed by plaintiff, Clean Label Project Foundation ("CLP"). CLP's motion admits that the Notice of Removal was timely filed and that there is complete diversity of citizenship between the parties. CLP has refused to disclaim that less than $75,000 is at issue. Further, federal question jurisdiction exists because CLP's claim under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904 *et seq*. ("CPPA") depends on showing the 2018 Products at issue are adulterated within the meaning of the Food, Drug and Cosmetics Act. NOW's motion to dismiss the FAC on grounds of standing, preemption and primary jurisdiction is pending. *See* Dkt. Nos. 8-1, 13.

## BACKGROUND

The background for this case and CLP's allegations are set forth in NOW's Notice of Removal and its dismissal motion, and NOW will not burden the Court by repeating them here. Dkt. Nos. 1 & 8-1 at 2-4.

16247216

## ARGUMENT

**I.     THIS CASE WAS PROPERLY REMOVED UNDER DIVERSITY JURISDICTION.**

CLP admits that NOW's Notice of Removal was timely filed and that complete diversity exists between CLP and NOW. See Dkt. No. 11 at 1, 3, 4. The only issue to be decided by the Court under 28 U.S.C. § 1332(a) is whether the amount in controversy exceeds $75,000 exclusive of interest and costs. NOW believes that the answer to that question is yes.

CLP seeks all of the remedies under the CPPA, D.C. Code § 28-3905(k)(2)(A-F), including (a) a declaration that NOW violated the statute, (b) injunctive relief, (c) "corrective advertising to the residents of the District of Columbia that restores consumers", and (d) CLP's costs and disbursements, including attorneys' and experts' fees. FAC p. 30 (request for relief). Despite this array of remedies, CLP argues that it "affirmatively claimed that the amount in controversy does not exceed $75,000." Dkt. No. 11 at 4; *see also* FAC p. 7 n. 14 ("There is no diversity jurisdiction as the amount in controversy does not exceed the federal standard."). There is nothing in the FAC or the remand motion in which CLP actually disclaims or waives that all of the relief sought under § 28-3905(k)(2)(A-F) would be less than $75,000. NOW asked CLP's counsel whether they would make such a disclaimer and they have not. *See* Dkt. No. 1 at 2; Ex 1. (Nov. 30, 2020 email). Nor does the motion to remand expressly state that the cost of all of the relief that CLP is seeking would be under the jurisdictional amount. As such, removal was proper.

CLP's reliance on *Lowdermilk v. US Bank National Ass'n*, 479 F.3d 994 (9th Cir. 2007), is misplaced. That case involved the $5 million threshold under the Class Action Fairness Act. The plaintiff alleged violations of state wage laws as a purported class action. The defendant removed the case to federal court and the District Court remanded. The Ninth Circuit affirmed. The complaint in that case sought damages, penalty wages, costs, attorneys' fees, and interest and sought total relief

"in total, less than five million dollars." *Id*. at 996. Further, "Plaintiff's counsel repeatedly stated at oral argument that the sum total of damages plaintiffs are currently seeking – **including** attorneys' fees and costs — does not exceed $5,000,000." *Id*. at 1003. The Court of Appeals found that since the full relief sought by the plaintiff, including attorneys' fees, did not exceed the jurisdictional amount, remand was proper.

      Here, CLP has not made such an express disclaimer that the total amount of the relief sought under the CPPA – including payments, attorneys' and expert fees, injunctive relief, and corrective advertising – would be less than $75,000. NOW sought such a disclaimer but CLP did not provide one. Ex. 1. Nor does CLP's motion to remand clearly and expressly make a representation to the Court, as the plaintiff did in *Lowdermilk*, that all of the relief it seeks under § 28-3905(k)(2)(A-F) would not add up to $75,000.

      Absent such a disclaimer as to all components of the CPPA, the amount in controversy would necessarily exceed $75,000. CLP seeks injunctive relief and corrective advertising. When a plaintiff seeks injunctive relief, the amount in controversy "may be measured by either the value of the right sought to be gained by the plaintiff . . . or the cost of enforcing that right to the defendant," *Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972); *see also Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978). "The value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant." *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 39 (D.D.C. 2013); *see also Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 153 (D.D.C. 2007) ("The value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant."). An

injunction to remove any violative Products from the market (to the extent that any are being sold[1]), along with required corrective advertising, would necessarily be expensive and exceed the amount in controversy threshold. *See Fefferman v. Dr. Pepper Snapple Grp., Inc.*, 2013 WL 12114486, *3 (S.D. Cal. Mar. 12, 2013) (costs for disposing of unused packaging and product, repurchasing and reclaiming unsold products from retailers, and undertaking an advertising campaign to correct alleged misrepresentations). Moreover, NOW sells product across the United States, including on Amazon.[2] The cost of complying with any injunction would not be limited to the District of Columbia.

In addition to the injunction, CLP seeks to recover its fees and costs for its attorneys and experts. The CPPA permits recovery of attorneys' fees and litigation expenses for prevailing plaintiffs. D.C. Code § 28-3905(k)(2)(B). Such fees are part of the amount in controversy, which CLP does not contest. *See Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 193, 301 (D.D.C. 2013). The amount of such fees would necessarily exceed $75,000 by themselves. Here, CLP's FAC has 159 separate paragraphs. It makes detailed factual allegations, including about matters of science, clinical studies, health and safety. It will undoubtedly seek or conduct additional testing of products in discovery. Expert testimony would be required to try to prove the hearsay statements in its pleading and to rebut expert evidence from NOW. There is no rational basis to conclude that these expenses would be less than $75,000. That fact is supported by awards in other consumer protection cases. *Beck v. Test Masters Educational Servs., Inc.*, 73 F.Supp.3d 12, 20 (D.D.C. 2014) (awarding $927,707 in attorneys' fees and expenses under CPPA); *see also*, *In re Target Corp. Customer Data*

---

[1] CLP's claim against NOW is based on products purchased and tested in 2018. FAC ¶¶ 10, 26, 120-22. CLP did not allege that any products currently made and sold by NOW have any issues as to their levels of purity and folic acid.

[2] *See, e.g.,* https://www.amazon.com/stores/NOW+Foods/page/7C89AA39-7209-4289-AA91-6D186B43F3C6?ref_=ast_bln.

4

*Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018); *In re Capital One Tel. Consumer Protection Act Litig.*, 80 F.Supp.3d 781, 809 (N.D. Ill. 2015).

The CPPA includes as remedies under § 28-3905(k)(2)(A) payment of treble damages or $1,500 per violation, whichever is greater, and actual damages to consumers. "Punitive damages are considered in determining the amount in controversy for purposes of diversity jurisdiction." *See Hackman v. One Brands, LLC*, No. 18-2101, 2019 WL 1440202, at *6 (D.D.C. Apr. 1, 2019). These amounts are currently uncertain because the FAC does not allege how many District of Columbia residents purchased the prenatal Products or what CLP believes constitutes "per violation" in the context of this case. It would take only 50 violations to add up to $75,000. CLP's requested relief is broad enough to encompass statutory and treble damages, making it more than likely the amount in controversy exceeds $75,000. On this record, diversity jurisdiction exists and the motion to remand should be denied.

CLP's non-aggregation argument does not change the result. It allegedly brings the CPPA claim "[o]n behalf of themselves [sic] and the general public…." FAC page 1. When the defendant would incur costs over $75,000 no matter how many plaintiffs assert claims, aggregation of plaintiffs' claims is unnecessary to reach the amount in controversy. *See, e.g.*, *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006); *In re Microsoft Corp. Antitrust Litig.*, 127 F.Supp.2d 702, 719 (D. Md. 2001); *Katz v. Warner-Lambert Co.*, 9 F.Supp.2d 363, 364-65 (S.D.N.Y. 1998). The non-aggregation principle does not apply when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, 394 U.S. 332, 335 (1969). "[A] common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members." *Nat'l Welfare Rights Org. v. Weinberger*, 377 F. Supp. 861, 866 (D.D.C. 1974) (citing *Bass v. Rockefeller*,

16247216

331 F. Supp. 945, 950 (S.D.N.Y. 1971), *vacated on other grounds*, 464 F.2d 1300 (2d Cir. 1971)). In an action for injunctive relief, "there is a common and undivided interest in the injunctive relief" that would "benefit the class as a whole" and the defendant's cost of compliance does not depend on the size of the plaintiff group or the identity of its members. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 835–836 (E.D. Mich. 1999). A court should not apportion the cost of an injunction to the defendant across absent plaintiffs. *See, e.g.*, *Schweinfurth v. Motorola, Inc.*, 2005 WL 2233258, *3 (N.D. Ohio Sept. 9, 2005); *Hoffman v. Vulcan Materials, Co.*, 19 F. Supp. 2d 475, 483 (M.D.N.C. 1998); *Bass v. Rockefeller*, 331 F. Supp. 945, 951 (S.D.N.Y. 1971), *vacated on other grounds*, 464 F.2d 1300 (2d Cir. 1971). This is true here where CLP alleges it brings the suit on behalf of itself and the "general public". FAC page 1.

Thus, when the defendant's compliance costs are unaffected by the number of claimants, every plaintiff after the first adds nothing to the defendant's costs. The court may exercise diversity jurisdiction over the first plaintiff's claim. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction."); *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 652 (7th Cir. 2006) (where plaintiffs sought an injunction requiring defendant to change its billing practices that would cost the same whether it was made for just one customer or every customer served by the company in the case met the amount-in-controversy requirement); *Organic Consumers Assoc. v. Hain Celestial Group*, 285 F.Supp.3d 100, 101-02, n.2 (D.D.C. 2018)

(the Court had diversity jurisdiction where the plaintiff sued under the CPPA to stop the defendant from labeling its infant and toddler formula products as "organic").

The amount at issue here on just the injunction and litigation expenses CLP seeks would be the same whether there is one plaintiff, CLP, or whether some number of D.C. consumers would receive an indirect benefit if that relief were to be granted. In these circumstances, the expenses should not be apportioned among some currently unknown number of consumers. These claims are common and undivided and the expenses are unaffected by the number of plaintiffs asserting claims.

## II.    THIS COURT ALSO HAS FEDERAL QUESTION JURISDICTION.

NOW also properly removed this case under 28 U.S.C. § 1331. A complaint raises a substantial question of federal law for removal purposes if the plaintiff's right to relief depends on resolution of a substantial question of federal law, even if state law creates the plaintiff's cause of action. *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 690 (2006). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The test is met here.

CLP has raised questions of federal law, in particular the Food, Drug and Cosmetics Act, 21 U.S.C. § 301, *et seq*. ("FDCA"). Dkt. No. 1 at 8-11. NOW's pending motion to dismiss based on preemption and primary jurisdiction issues explains why the FAC necessarily raises federal issues that are actually disputed. NOW incorporates by reference that motion. Dkt. No. 8-1 at 2-4, 8-14. The FDCA, administered by the Food and Drug Administration ("FDA"), regulates "dietary supplements", including the vitamins at issue here. 21 U.S.C. § 321(ff). The FDCA prohibits the "introduction or delivery for introduction into interstate commerce any food … that is adulterated."

21 U.S.C. § 331(a). The statute requires the FDA to enforce its provisions through injunctions, fines or imprisonment, or seizure of the adulterated food. 21 U.S.C. §§ 332–334. The FDCA exclusively governs the issues of whether a dietary supplement is "adulterated." 21 U.S.C. § 342.

CLP's FAC attacks NOW's product labeling and advertising. *See, e.g.*, FAC page 1 & ¶¶ 17, 117, 130, 139. Under the FDCA, a state may not "directly or indirectly establish . . . any requirement for the labeling of food [including dietary supplements] . . . that is not identical to the requirement" of federal regulations. 21 U.S.C. § 343-1(a) (2), (5); *see also Greenberg v. Target Corp.*, 2021 WL 116537, *3 (9th Cir. Jan. 13, 2021); *Gibson v. Quaker Oats Co.*, 2017 WL 3508724, *4 (N.D. Ill. Aug. 14, 2017); *In re Couse,* 850 A.2d 304, 308 (D.C. 2004). The marketing and advertising requirements for dietary supplements are also regulated by the FDA. S*ee Nemphos v. Nestle Waters N. Am., Inc.,* 775 F.3d 616, 625 (4th Cir. 2015). CLP is trying to use the CPPA to essentially regulate what NOW can and cannot say on the labels and advertising of its dietary supplement products. CLP has necessarily placed at issue the content of NOW's materials and their regulation by FDA.[3]

The FAC also raised questions of federal law by repeatedly alleging that NOW's Products are "adulterated" and unsafe. FAC pages 1-2 & ¶¶ 14-16, 69, 90, 107, 109, 116, 130, 133, 136, 140, 148, 150. For dietary supplement products, "adulteration" is a term of art in the dietary supplement industry and is expressly defined in 21 U.S.C. § 342(f)(1). The statute is intended to protect consumers from a product that is "a dietary supplement or contains a dietary ingredient that presents a significant risk of illness of injury" in two distinct situations: (1) under the "conditions of use recommended or suggested in labeling," and (2) where no conditions of use are suggested or recommended in the labeling, under the "ordinary conditions of use." 21 U.S.C. § 342(f)(1). While

---

[3] The FDA has not taken any action on the labels and advertising of the Products in dispute.

16247216

CLP's pleading may not have cited provisions of the FDCA, its CPPA claim is asking the Court to apply a standard for adulteration and safety as to certain alleged heavy metal contaminates in the Products. While CLP claims that it is not seeking a determination of any safe level of heavy metals, it actually is doing just that. It alleges that there is no safe level – the only safe level is **zero**. *See, e.g.,* FAC ¶¶ 6, 81, 95, 108. It also tries to bolster that position by referencing statements by the FDA. FAC ¶¶ 6, 86. CLP is directly asking this Court to find that NOW made misrepresentations because the Products allegedly contain some detectible level of heavy metals, which render them unsafe for consumers. In other words, they would present a "significant risk of illness of injury", which is the very definition of adulteration. 21 U.S.C. § 342(f)(1). CLP characterizes this as just a false advertising case. But it overlooks the allegation that it seeks "an injunction to halt NHG's [NOW's] false marketing and sale of the Products." FAC ¶ 17. The question as to whether a supplement is adulterated and unsafe is governed by federal statute and is at the heart of the case.

The application of the FDCA is disputed.[4] As noted, CLP's position is that there is no safe level of heavy metals in a product. In its reply in support of its motion to dismiss, NOW pointed to a new FDA statement on its regulatory activity involving heavy metals in baby food. Dkt. No. 13 at 8-9; Dkt. No. 13-1 (*FDA Response to Questions About Levels of Toxic Elements in Baby Food, Following Congressional Report* (Feb. 16, 2021)). The FDA wrote that:

> The FDA takes exposure to toxic elements in the food supply extremely seriously, especially when it comes to protecting the health and safety of the youngest and most vulnerable in the population. Toxic elements, such as arsenic and lead, are present in the environment and may enter the food supply through soil, water or air. Because these elements occur in the environment, currently they cannot be completely avoided in the fruits, vegetables, or grains that are the basis for baby foods, juices, and infant cereals made by companies or by consumers who make

---

[4] CLP's motion represents that: "Defendant has not disputed the validity of the standards and law mentioned in Plaintiff's Complaint; nor has Defendant argued that such federal standards do not apply to this case." Dkt. No. 11 at 11. NOW's motion to dismiss is pending and it has not filed an answer in this case. For the record, NOW does dispute CLP's contentions.

9

16247216

their own foods. They also cannot be completely avoided by using organic farming practices. Our goal is to reduce exposure to toxic elements in foods to the greatest extent feasible and to further advance progress in this area through more research and enhanced collaboration among stakeholders.

Dkt. No. 13-1.

The mere presence of a toxic element does not automatically cause a food to be adulterated or unsafe. The FDA's statement shows that the determination is a complex one, requiring application of scientific analysis and application of difficult matters of toxicology and human physiology. As is clear from NOW's briefing on the motion to dismiss, CLP's allegations that NOW's products are adulterated is in dispute.

Further, the federal issues are substantial. Questions about the standards for evaluating the safety, labeling, marketing, and advertising of prenatal vitamins are not only significant to the parties in this case, but also "significant to the federal system as a whole." *Gunn*, 568 U.S. at 264. Congress amended the FDCA in 1994 with the Dietary Supplement Health and Education Act ("DSHEA")[5] to uniformly regulate dietary supplements with unique, comprehensive safety, labeling, manufacturing, and other related standards. *See, e.g.*, 103 Cong. Rec. S17049 (daily ed. Nov. 23, 1993) (statement of Sen. Hatch). So not only are the federal law questions substantial, they are also capable of resolution in federal court without disrupting the federal-state balance.

Accordingly, this case was properly removed under federal question jurisdiction.

## **CONCLUSION**

For the foregoing reasons, CLP's motion to remand should be denied.

---

[5] Pub. L. No. 103-417, § 4, 108 Stat. 4325 (1994).

10
16247216

Dated: February 24, 2021               Respectfully submitted,

                                       /s/ Richard J. Oparil
                                       Richard J. Oparil (D.C. Bar No. 409723)
                                       ARNALL GOLDEN GREGORY LLP
                                       1775 Pennsylvania Ave. NW, Suite 1000
                                       Washington, DC 20006
                                       (202) 677-4908
                                       Richard.oparil@agg.com

                                       Attorneys for Defendant
                                       NOW Health Group, Inc.

16247216

## **CERTIFICATE OF SERVICE**

The foregoing was served on all counsel of record on February 24, 2021 through the Court's ECF system.

/s/ Richard J. Oparil
Richard J. Oparil

16247216