**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLEAN LABEL PROJECT FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> NOW HEALTH GROUP, INC, <br><br> Defendant. | Case No. 21-cv-11-JDB <br><br> Judge John D. Bates |

**CLEAN LABEL PROJECT FOUNDATION'S REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

COMES NOW the Plaintiff Clean Label Project Foundation ("Plaintiff" or "CLP"), by and through counsel, respectfully submits this Reply to the Defendant NOW Health Group's ("Defendant" or "NOW") Opposition to Plaintiff's Motion to Remand to D.C. Superior Court [ECF 14] and moves this Court to remand this case back to the D.C. Superior Court, and as grounds therefore states:

## INTRODUCTION

This case should be remanded, and the Defendant has made no colorable arguments otherwise. Plaintiff brings this action authorized under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* ("CPPA"). This D.C. CPPA action was brought on behalf of CLP itself and the general public and seeks injunctive relief for the residents of the District of Columbia against the Defendant's deceptive advertising. Defendant has falsely marketed three of its prenatal supplement products ("Products")[1] as containing 1000mcg/serving of folic acid when, in fact, Plaintiff uncovered that Defendant's Products were both under-formulated and adulterated with heavy metals including lead, cadmium, and mercury through the independent ISO-17025 accredited laboratory testing. *See* Exhibit 1, First Amended Compl. (FAC) at ¶ 3-5, 110-117, 120-136. Thus, this action properly belongs in the D.C. Superior Court as provided under the D.C. CPPA statute. *See* D.C. Code § 28-3901 *et seq*.

Defendant has incorrectly claimed that this Court has diversity jurisdiction over this action. Although the parties are diverse, the amount in controversy, as affirmatively stated in Plaintiff's Complaint and the First Amended Complaint, which must be taken as true at this stage, "does not

---

[1] The three Products are as follows: 1) Super Nutrition SimplyOne Prenatal (90ct) (claimed amount of folic acid: 1000mcg/serving; test results: 737.46mcg/serving) (yielded a lead content 125.11ppb and a cadmium content of 150.51ppb); 2) Super Nutrition Prenatal Blend (180ct) (yielded a lead content of 68.27ppb and a cadmium content of 130.8ppb); 3) Super nutrition SimplyOne Prenatal (30ct) (yielded a lead content of 143.49ppb, a cadmium content of 231.57ppb, and a mercury content of 12.87ppb).

exceed the federal standard," and is, in reality, far below the seventy-five thousand dollar ($75,000) threshold required for diversity jurisdiction.[2] *See* Ex. 1, FAC p. 7 n.14; *see also* Ex. 1, FAC at ¶ 10 (stating Plaintiff's caused the Products to be purchased for the purpose of evaluation by a private laboratory).

Defendant's allegation that the amount in controversy is over seventy-five thousand dollars is a gross exaggeration based on aggregating speculative costs to the Defendant, and such aggregation of baseless numbers to inflate the amount in controversy has been consistently disallowed in prior case law. *See Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 102-08 (D.D.C. 2008). Defendant's arguments regarding the amount in controversy must fail, as CLP is only eligible for the statutory damages owed to it as a consumer, acting on behalf of the general public as a private attorney pursuant to D.C Code §28-3905(k)(1)(C)-(D) and § 28-3905(k)(2). *See Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297-301 (D.D.C 2013).

Regarding the issue of federal question, Defendant misapplies *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.* and erroneously argues that Plaintiff's Amended Complaint implicates the Federal Food, Drug and Cosmetics Act [hereinafter FDCA]. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see* 21 U.S.C. § 350(a); *see also* 21 C.F.R. §§ 106-07. Notably, federal courts are allowed to exercise federal jurisdiction over a state law claim only in very rare circumstances. Federal jurisdiction may be imposed on a state

---

[2] A unit of NOW's Products costs approximately $8.03 - $22.77 per unit, and Plaintiff's expenses in purchasing the units for laboratory testing clearly fall far below the $75,000 threshold. *See* Exhibit 2, Market Price of D's Prenatal Products. Under the D.C. CPPA, any claim under this chapter shall be brought in the Superior Court of the District of Columbia and may recover the following remedies: (A) Treble damages or $1,500 per violation, whichever is greater, payable to the consumer. *See* § 28-3905(k)(2) Thus, a hypothetical statutory award in this case would be no more than $1,500 x 3 (units) = $4,500 for each of the tainted units. *See* § 28-3905(k)(2). Moreover, contrary to Defendant's arguments, the cost of injunctive relief cannot be calculated based on the cost-to-defendant test, and punitive damages and conjectures about attorney's fees or expert costs cannot be aggregated to meet the amount-in-controversy requirement. *See Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 102-108 (D.D.C. 2008). Thus, Defendant's diversity jurisdiction argument fails entirely. 28 U.S. Code § 1332.

law claim only when the meaning of the federal law or the interpretation of the federal law is the central issue to the state law claim.  This action is purely based on the D.C. CPPA and alleges that Defendant's conduct constitutes deceptive advertising to D.C. consumers.  Thus, this action does not fall into the narrow scope of *Grable*, and there is no federal question that could confer federal jurisdiction over this action.  *Grable*, 545 U.S. 308, 312.

Further, in order to manufacture a false collision with federal law, the Defendant prematurely argued that Plaintiff's prayer for relief would cause the state court to supersede the federal regulations for the labeling of food [including dietary supplements] and that Plaintiff's CPPA claim is asking the Court to adhere to a standard for adulteration and safety as to certain alleged heavy metal contaminates in the Products.  *See* ECF 14, Def. Opp. to P's Mtn to Remand, at 8-9.  Additionally, the Defendant argued that whether NOW's Products are "adulterated" under U.S.C. § 342(f)(1) is a federal question and the central issue of this case.  *See* ECF 14, Def. Opp. to P's Mtn to Remand, at 9.  Both of Defendant's arguments must fail.  To be clear, Plaintiff has requested none of these remedies in its prayer for relief, as clearly stated in the First Amended Complaint.  *See* Ex. 1, FAC. at 30.  Defendant argued that CLP is trying to use the CPPA to essentially regulate what NOW can and cannot say on the labels and advertising of its dietary supplement products. This is simply untrue.  Plaintiff CLP is not alleging that it is unacceptable for Defendant's prenatal vitamins to contain substances that would render it non-compliant with the FDCA.  Similarly, the Plaintiff is not arguing how much folic acid the Defendant's prenatal Products should contain.   Rather, Plaintiff contends that the presence of lead, cadmium, and mercury with under-formulated folic acid in NOW's Products contradicts what a reasonable consumer would expect in prenatal vitamins marketed as superior, "triple power multivitamins," "better nutrition," "better birth weight," "support full-term birth, stronger baby's bones & energy

all day," and beneficial to "the development of fetus," as a consumer possesses the statutory right to be free from improper trade practices under the D.C. CPPA. *See* D.C. Code § 28-3904.

In sum, this case should be remanded back to the D.C. Superior Court as the Defendant has presented no colorable argument and has failed to carry its burden of proof for removal to federal court based on either diversity jurisdiction or federal question jurisdiction. *Apton v. Volkswagen Group of Am., Inc.*, 233 F. Supp. 3d at 11, 13-14, 17-18 (D.D.C. 2017).

## ARGUMENT

### I. FEDERAL COURT DOES NOT HAVE DIVERSITY JURISDICTION OVER THIS ACTION SINCE THE AMOUNT IN CONTROVERSY DOES NOT EXCEED $75,000

Plaintiff objects to Defendant NOW's arguments that the amount in controversy exceeds the $75,000 threshold. Defendant argued that CLP has not expressly disclaimed the total amount of relief sought under the CPPA – including attorney fees, injunctive relief, and corrective relief advertising – would be less than $75,000, and thus the amount in controversy would necessarily exceed $75,000. *See* ECF 14, p. 3. This equivocation is untrue.

To be clear, Plaintiff does not state an explicit prayer for relief regarding statutory damages, rather only injunctive relief on behalf of the general public. *See* Ex. 1, FAC at 30. However, even if Plaintiff CLP, as a consumer, were to seek statutory damages for itself under 28-3905(k)(2)(A) based on no more than three unit of the Products purchased for laboratory testing at a price of no more than $22.77 per unit (for a maximum of $1,500 (per violation) x 3 (units) = $4,500 in statutory damages), relevant law shows that this does not justify removal. *See* § 28-3905(k)(2) ("Any claim under this chapter shall be brought in the Superior Court of the District of Columbia and may recover the following remedies: (A) Treble damages or $1,500 per violation, whichever is greater, payable to the consumer."); *see also Hackman v. One Brands, LLC,* 2019 U.S. Dist.

4

LEXIS 55635, 2019 WL 1440202 (D.D.C. Apr. 1, 2019), at *26, 27 ("The DCCPPA sets damages at $1,500 per violation; accordingly, Plaintiff requests $3,000 in statutory damages….Even if the Court combines these amounts, Defendant has established that Plaintiff's amount in controversy is only $27,825, well below the required $75,000."); *and see* Exhibit 2, Market Price of D's Prenatal Products.  Therefore, even if Plaintiff CLP sought statutory damages for itself, the available maximum statutory damages of $4,500 is insufficient to meet the $75,000 amount-in-controversy for federal jurisdiction.

Defendant adds up the very speculative costs of the injunctive relief, corrective advertising, punitive damages, future attorneys' and experts' fees, and other monetary damages without any evidentiary support even though the burden of proof to provide such evidence for removal to federal court lies with the Defendant.  *See* ECF 14, Def. Opp. to P's Mtn to Remand, at 4-5; *Apton*, 233 F. Supp. 3d at 11.  Such aggregation of speculative costs that the Defendant attempts to rely upon in order to reach the amount in controversy was analyzed and squarely rejected in *Breakman*.  *See Breakman*, 545 F. Supp. 2d at 102-108 (holding that there is a strong presumption that the initiation of a case in state court means that the plaintiffs have not claimed an amount to qualify for federal jurisdiction, that the aggregation of actual and statutory damages of each harmed consumer is improper in representative actions, that the cost of injunctive relief cannot be calculated based on the cost-to-defendant test, and that punitive damages and conjectures about attorneys' fees and expert costs cannot be aggregated to meet the amount-in-controversy requirement).[3]

---

[3] One need to look no further than *Snyder*, 394 U.S. 332, and *Zahn*, 414 U.S. 291, establishing the non-aggregation principle, to see why Defendant's potential costs of complying with CLP's injunction cannot establish the amount-in-controversy. *Snyder v. Harris*, 394 U.S. 332, 335 (1969) ("the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement."); *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973) ("multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit").  The non-aggregation principle states that the value of different claims cannot "be aggregated

Plaintiff disagrees with Defendant's argument that Plaintiff fails to disclaim the $75,000 threshold. On the contrary, CLP expressly stated in its original Complaint and the First Amended Complaint that "there is no diversity jurisdiction as the amount in controversy does not exceed the federal standard." *See* Ex. 1, FAC p. 7 n. 14; *and see* Dkt. No. 11 at 4. Plaintiff not only disputes but fully rejects Defendant's speculative $75,000 amount-in-controversy, which is inflated by Defendant's violation of the non-aggregation principle. *See Breakman*, 545 F. Supp. 2d at 102-108; *see also Toxin Free USA v. J.M. Smucker Co.*, No. 20-cv-1013 (DLF), 2020 U.S. Dist. LEXIS 222520, at *10-11 (D.D.C. Nov. 30, 2020)* (where the plaintiff does not seek any integrated claim for relief that would hold the defendant liable for a fixed amount so that the general public would have a common and undivided interest, and the defendant's compliance costs cannot be aggregated to satisfy the amount in controversy requirement.).

Defendant cited to *Tatum v. Laird* 444 F.2d 947, 951 (D.C. Cir. 1971) and non-binding cases from other Circuits and contended that the D.C. Circuit wholesale accepted the cost-to-defendant test in determining the amount in controversy. *See* ECF 14 Def. Opp. to P's Mtn to Remand, at 3. Defendant's representation is inaccurate. Notably, although the D.C. Circuit recognized the "possible conflict" between the non-aggregation principle and "the rule which allows the jurisdictional amount to be based on the cost to the defendant of proposed relief," the Court has not "attempted to resolve" the possible conflict. *See Fenster v. Schneider*, 636 F.2d 765,

---

to meet the required jurisdictional amount." *Snyder*, 394 U.S. at 336. Its objective is to limit "transfer[s] into the federal courts [of] numerous local controversies involving exclusively questions of state law." *Id.* at 340. Accordingly, it instructed lower courts to "'strictly constru[e]'" the jurisdictional amount to prevent an end-run around "Congress['s] determin[ation] that cases involving lesser amounts should be left to be dealt with by the state courts." *Id.* at 340 (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). Defendant NOW also cites to *Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. April 27, 1971), to promote the "either-viewpoint" approach, which has been thoroughly discussed and rejected in *Animal Legal Def. Fund* because it conflicts with the non-aggregation principle that teaches "the cost of compliance that a court should consider when determining the amount in controversy is the total amount divided among the beneficiaries of the injunction" in D.C. CPPA representative actions. *See* 249 F. Supp. 3d at 59-61.

6

767 n.1 (D.C. Cir. 1980).  Moreover, the similar cost-to-defendant argument has been rejected by a recent decision of this Court because it contradicts the non-aggregation principle.  *See Animal Legal Def. Fund v. Hormel Foods Corp*, 249 F. Supp 3d 53, 60 (D.D.C. 2017) ("the Court is persuaded by several district court opinions from this Circuit that have considered this conflict in the context of cases brought under the DCCPPA on behalf of the general public seeking injunctive relief and have determined that considering the total cost to the Defendant of complying with that relief would violate the non-aggregation principle."); *see also Hackman v. One Brands, LLC*, 2019 U.S. Dist. LEXIS 55635, at *16-17.

Therefore, Defendant is obligated to demonstrate "that the cost of the injunction divided pro rata among the members of the general public of Washington, D.C. would exceed the jurisdictional threshold."  *See Animal Legal Def. Fund*, 249 F. Supp. 3d at 60-61 (rejecting the declaration of the defendant's vice president of marketing that the cost of compliance would add up to $5,440,000, because defendant cannot credibly demonstrate that the cost of the injunction divided pro rata among the general public would exceed the jurisdictional threshold); *see also*, *Breathe DC v. Santa Fe Nat. Tobacco Co*., 232 F. Supp. 3d 163, 170-71 (D.D.C. 2017) (rejecting the defendant's aggregated costs of compliance of $900,000, even when supported by testimony from the company's director of marketing, because "the cost of compliance must be divided among the beneficiaries of the injunction."); *see also, Toxin Free USA*, 2020 U.S. Dist. LEXIS 222520, at *8-11 (holding that compliance cost cannot be aggregated, as "each member of the general public on whose behalf Toxin Free seeks injunctive relief could pursue a claim against the defendants under the DCCPA for the alleged conduct challenged in this action."); *and see Food & Water Watch, Inc. v. Tyson Foods, Inc*., No. 19-cv-2811, 2020 U.S. Dist. LEXIS 38232, at *14-18 (D.D.C. Mar. 5, 2020) (same).  Defendant's argument parrots those of other companies sued under

the D.C. CPPA for injunctive relief, which have *uniformly* resulted in remand because the defendants cannot meet their burden to attain diversity jurisdiction based on the cost of the injunction.[4]

Lastly, Defendant cited to *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005) and *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 652 (7th Cir. 2006) and argued that "the defendant's compliance costs are unaffected by the number of claimants. Every plaintiff after the first adds nothing to the defendant's costs." *See* ECF 14 Def. Opp. to P's Mtn to Remand, at 6. Notably, neither of the cases cited by Defendant concerned a representative action seeking injunctive relief on behalf of the general public. In *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* the central issue is whether the federal court can exercise supplemental jurisdiction over additional plaintiffs if their claims do not meet the amount-in-controversy in a diversity action. In the current case, this Court need not consider the supplemental jurisdiction issue because it lacks original diversity jurisdiction in the first place. The other case cited by the Defendant, *Synfuel Technologies v. DHL Express (USA)* involves a class action, which is totally different from CLP's representative action. *See Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 652 (7th Cir. 2006). Unlike *Synfuel,* CLP did not file a class action, and CLP is the only plaintiff in this case. Therefore, *Synfuel* is irrelevant to the determination of the amount-in-controversy for this case.

In conclusion, Defendant has the burden of proof in demonstrating diversity jurisdiction for removal to federal court, and it has failed to do so by relying upon speculative costs and

---

[4] *See Hackman*, 2019 U.S. Dist. LEXIS 55635, at *8-13; *Smith*, 2017 U.S. Dist. LEXIS 135478, at *1-5; *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 32 (D.D.C. 2014); *Nat'l Consumers League v. Bimbo Bakeries*, 46 F. Supp. 3d 64, 74 (D.D.C. 2014); *Zuckman*, 958 F. Supp. 2d at 302–03 (D.D.C. 2013); *Nat'l Consumers League v. General Mills, Inc*., 680 F. Supp. 2d 132, 140-41 (D.D.C. 2010); *Breakman*, 545 F. Supp. 2d at 107-08; *see also*, 8 D.C. Practice Manual, Consumer Protection, 19 (2013).

theoretical calculations based on no evidence, and Defendant aggregated the amount-in-controversy in ways prohibited by prior case law.  *See Apton*, 233 F. Supp. 3d at 11; *see also*, *Breakman*, 545 F. Supp. 2d at 102-108; *see also*, *Hackman*, 2019 U.S. Dist. LEXIS 55635, at *13-25.  Because the Defendant has not satisfied the amount-in-controversy requirement, the Court lacks diversity jurisdiction under 28 U.S.C. § 1332(a).

## II.     REMOVAL IS NOT APPROPRIATE, AS PLAINTIFF CLP BRINGS ONLY STATE-LAW CLAIMS AND HAS RAISED NO FEDERAL QUESTION

To support removal, Defendant NOW argues that CLP's deceptive marketing claims brought under the D.C. CPPA is preempted by federal regulations and have raised questions of federal law, particularly the FDCA.  *See* ECF 14 Def. Opp. to P's Mtn to Remand, at 7.  Defendant cited to *Gunn v. Minton*, 568 U.S. 251, 258 (2013) as well as *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) and argued that the *Grable* test is met in this case.  *See* ECF 14 Def. Opp. to P's Mtn to Remand, at 7.  However, the question of whether the Plaintiff's claims are preempted is a matter reserved for a motion to dismiss and not before this Court.  Defendant's argument amount to a preemption defense, and a federal defense does not give rise to a federal question jurisdiction.

Contrary to Defendant's assertions, this case does not fall into the narrow *Grable* framework, which controls cases where federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.  *Grable*, 545 U.S. at 312, 314.  The Supreme Court has since limited the scope of its holding in *Grable*, clarifying that *Grable* only applies to a "special and small category" of cases, and it "takes more than a federal element" to establish federal question jurisdiction under Grable framework.  *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006).  No federal law nor federal law element could be found in CLP's First Amended Complaint.  Unlike in *Grable*, this Court does not need to interpret

9

or inquire into the meaning or requirements of the FDCA in order for the Plaintiff to prevail. *Grable*, 545 U.S. at 312.  The Defendant attempted to argue in its Opposition that Plaintiff's prayer for relief is essentially requiring the Court to decide on the issue of whether Defendant's Products are adulterated under federal regulations.  However, Defendant misunderstands the test in *Grable*.

Plaintiff CLP makes no claim or reference to any deficiencies in Products' required nutritional content as regulated by federal guidelines.  Instead, Plaintiff pleaded that Defendant's advertising campaign regarding its prenatal products marketed as superior to other competing products, "triple power multivitamins," "better birth weight," "reduced fatigue," "support full-term birth, stronger baby's bones & energy all day," "reduced fatigue," is false and deceptive, as the Products were found to be under-formulated as to folic acid and contain neurotoxins including lead, cadmium, and mercury under certified laboratory testing.  *See* Ex. 1, FAC ¶¶ 3-5, 10-17, 99-109, 110-19, 123-36; D.C. Code §48-103 *et seq*.  In fact, NOW's Products were found to contain one of the highest concentrations of lead, cadmium, and mercury, higher than 62.5% to 96.5% of other prenatal vitamins products tested by CLP.  *See* Ex. 1, FAC ¶ 123-27.  The Complaint alleges with particularity, among other claims under the D.C. CPPA, the following:

> [Defendant NOW]'s Products are under-formulated to folic acid; thus, consumers who take the Product for specific advertised health purposes are not getting proper dosage… [Defendant NOW]'s Products are adulterated and contain quantifiable amounts of heavy metals which are harmful if exposed to both mothers and babies during prenatal process… [Defendant NOW]'s marketing practices are false and misleading as they extoll the brain-supporting feature of the Products while exposing infants and fetuses to concerning levels of known neurotoxins for which there is no established safe level. [Defendant NOW]'s Products are adulterated under D.C. Code §48-103 *et seq*… The Products lack the characteristics, ingredients, benefits, standards, qualities, or grades that NHG states and implies… NHG's misstatements, innuendo, and omissions of material fact are material and have the tendency to misled. NGH knowingly did not sell the Products as advertised. The facts as alleged above demonstrates that NHG has violated the CPPA, D.C. Code §28-3901 *et seq*. [Defendant NOW]'s conduct is unlawful trade

10

practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code §28-3904… [Defendant NOW] has violated D.C. Code §28-3904 *et seq.*

*See* Ex. 1, FAC ¶¶ 106-09, 142.  None of these claims under the D.C. CPPA concerning deceptive marketing and false advertising imply or trigger a federal question or federal element.

In another case brought by the consumer protection group, National Consumers League (NCL), against Gerber Good Start infant formula, the NCL sued Gerber under the D.C. CPPA because Gerber falsely claimed that Good Start could prevent or reduce infant allergies on its label when such claims were untrue.  *Nat'l Consumers League v. Gerber Prods. Co.*, No. 2014 CA 008280 B, 2015 D.C. Super. LEXIS 10, at *8-9 (D.C. Super. Ct. Aug. 5, 2015).  At the time, Gerber received warning and was being actively investigated by the FDA for its misbranding and unauthorized, false advertising of infant formula.  *See Gerber*, 2015 D.C. Super. LEXIS 10, at *6-7.  Like Defendant NOW, Gerber made the argument that the FDA and/or the FTC have primary jurisdiction and contended that the D.C. Superior Court should "defer to the FDA's on-going process and expertise, and dismiss the case."  *See id*. at *8.

> However, the Court still determined that the nature of the issue does not "justify removing [such suits] from the sphere of the judiciary and placing it exclusively within the jurisdiction of the FDA." *Bimbo*, 2015 D.C. Super. LEXIS 5, at *19; *Doctor's Associates*, 2014 D.C. Super. LEXIS 15, at *12-13. This is more so the case when the plaintiff's claims are not confined to labeling practices but more generally take issue with representations made about the disputed products. *See Bimbo*, 2015 D.C. Super. LEXIS 5, at *19; *Doctor's Associates*, 2014 D.C. Super. LEXIS 15, at *12-13. Here, NCL's claims do not solely concern misbranding, but also encompass Gerber's overall marketing practices, of which misbranding is only a part. Because the Court has not yet determined what specific remedies NCL seeks as corrective advertising or revised labeling, it is premature to dismiss NCL's claims on the basis of primary jurisdiction at this early stage. *See Bimbo*, 2015 D.C. Super. LEXIS 5, at *19.

*See Gerber*, 2015 D.C. Super. LEXIS 10, at *8-9.  In *Nat'l Consumers League v. Gerber*, the D.C. Superior Court also reviewed and rejected similar federal regulations arguments proffered here by

11

Defendant NOW as "premature." *Id.* (holding that "plaintiff's claims are not confined to labeling practices but more generally take issue with representations made about the disputed products" and "encompass Gerber's overall marketing practices, of which misbranding is only a part," thus the specific remedies constituting corrective advertising or revised labeling were too early to be determined at the motion to dismiss stage, allowing the Plaintiff's D.C. CPPA claims to proceed in D.C. Superior Court). Injunctive relief in this case can take many forms that may curtail the Defendant's false adverting campaign and bring the Defendant back into compliance with the D.C. CPPA, but any specific relief is merely conjecture at this point and cannot be determined until adequate discovery has been conducted.

Like Gerber's Good Start claiming to prevent infant allergies, NOW's representations mislead and/or have the ability to mislead consumers into believing that NOW's Products are beneficial to health, pregnancy, and the development of fetuses when they are not. *See Gerber*, 2015 D.C. Super. LEXIS 10, at \*4-5, 12-14 (upholding the consumer's "statutory right to be free from improper trade practices" under the D.C. CPPA against the infant formula maker, Gerber). None of Plaintiff's claims or relief requested implicate a federal question and, therefore, should properly be litigated in D.C. Superior Court, analogous to how NCL was permitted to do so in *Nat'l Consumers League v. Gerber*. *Id.* at \*12-14.

Recently, the D.C. Superior Court held, in context of motion to dismiss in a lawsuit also brought by Plaintiff CLP against defendant Panera, LLC, that similar preemption arguments forwarded by the defendant based on the FDCA and the Nutrition Labeling and Education Act ("NLEA") are misplaced, even where regulatory guidelines allowed a tolerance level of the contaminant, glyphosate, to be higher than what was detected in Panera's tested product, and where the plaintiff's claims were potentially inconsistent with federal laws. The Superior Court stated:

> Panera confuses the core issue of this case. Plaintiffs are not alleging that it is unacceptable to have any trace amount of glyphosate in the food products, but are rather contending that the presence of glyphosate, pesticides, or fungicides contradicts what a reasonable consumer would consider as "clean" or "100% clean" food. Compl. ¶ 61. An interpretation of "clean" in food labeling would not directly or indirectly contravene the FDCA and NLEA's regulations of safe levels of glyphosate. While Panera may use these regulations and standards as a basis for whether a certain level of glyphosate residue in foods is safe, this does not preempt the claim overall as Plaintiffs are challenging the use of the word "clean" in reference to food that contains the chemical substances. Accordingly, Panera's claim that Plaintiffs' allegations are precluded by federal law is without merit.

*See Clean Label Project Found. v. Panera, LLC*, No. 2019 CA 001898 B, 2019 D.C. Super. LEXIS 14, at *12-13 (D.C. Super. Ct. Oct. 11, 2019) (denying motion to dismiss).

Similarly, CLP's Complaint does not explicitly or implicitly allege any federal question. The Plaintiff is challenging the Products under the D.C. CPPA to determine whether the presence of neurotoxins in the Products and the under-formulated prenatal vitamins contradict what a reasonable consumer would consider as beneficial to pregnant mothers and the development of the fetus. *See* Ex. 1, FAC ¶¶ 32-98, 99-119; *see Clean Label Project Found.*, 2019 D.C. Super. LEXIS 14, at *12-13.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, and those set forth in its opening memorandum, Plaintiff Clean Label contends that this Court lacks jurisdiction over this matter and respectfully requests remand to the D.C. Superior Court.

Dated: March 17, 2021.

13

Respectfully submitted,

/s/ Travis Pittman
Travis Pittman (D.C. Bar No. 1016894)
Local Counsel for Plaintiff
Holmes Pittman & Haraguchi, LLP
P.O. Box 380
Chester, MD  21619
Phone: (410) 482-9505
Fax: (443) 782-0362
jtpittman@hphattorneys.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 17, 2021, a copy of the foregoing was served via the Court's electronic filing system on all counsel of record.

/s/ Travis Pittman
Travis Pittman