UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLEAN LABEL PROJECT FOUNDATION,

Plaintiff,

v.

NOW HEALTH GROUP, Inc.,

Defendant.

Civil Action No. 21-11 (JDB)

**MEMORANDUM OPINION**

Plaintiff Clean Label Project Foundation ("CLP"), on behalf of itself and the general public of the District of Columbia, filed this action in D.C. Superior Court alleging that NOW Health Group, Inc. ("NOW") engaged in unlawful trade practices in violation of the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code §§ 28-3901–28-3913 (2021). NOW removed the case to federal court, asserting that this Court has both diversity and federal question jurisdiction over CLP's claims, and moved to dismiss on multiple grounds. CLP moved to remand the action to D.C. Superior Court, challenging both jurisdictional bases. Because this Court concludes that it lacks subject-matter jurisdiction, it will grant CLP's motion to remand and deny NOW's motion to dismiss as moot.

**Background**

NOW is a dietary supplement company that produces, markets, and sells prenatal vitamins including the Super Nutrition SimplyOne Prenatal (30 count), the Super Nutrition SimplyOne Prenatal (90 count), and the Super Nutrition SimplyOne Prenatal Blend (180 count). Mem. in Supp. of Def.'s Mot. to Dismiss First Am. Compl. ("Def.'s Mot. to Dismiss") [ECF No. 8-1] at 3.

1

NOW promotes these products as "Triple Power Multivitamins," and its packing and marketing for these products include claims such as "Better birth weight," "Reduced Fatigue," "Supports Full-Term Birth, Stronger Baby's Bones & Energy All Day," and "better nutrition." Pl.'s First Am. Compl. ("Am. Compl.") [ECF No. 1-3] ¶¶ 3–4.

In 2018, CLP—a non-profit public interest organization whose mission is to educate the public and enable consumers to make informed shopping choices—caused the purchase of three of NOW's prenatal vitamin products for the purpose of testing and evaluation.[1] Id. ¶ 21–26. CLP alleges that its testing revealed that the products were under-formulated for folic acid—increasing the risk of miscarriage, stillbirth, and unhealthy prenatal development—and that the products contained lead, cadmium, and mercury—heavy metal compounds known to cause harm in fetuses and infants. Id. ¶¶ 77, 87, 96.

The DCCPPA allows a nonprofit organization to bring an action "on behalf of itself or any of its members, or on any such behalf and on behalf of the general public," and allows a "public interest organization" to bring an action "on behalf of the interests of a consumer or a class of consumers." Id. § 28-3905(k)(1)(C), (D). Suing under these provisions, CLP filed a complaint against NOW in D.C. Superior Court on September 15, 2020, Compl. [ECF No. 1-1], which it amended on December 18, 2020, see Am. Compl. at 30. Specifically, CLP alleges that NOW engaged in an unlawful trade practice under the DCCPPA when it packaged, marketed, and sold prenatal vitamin products in a manner that misled consumers into believing that the products were

---

[1] There is some dispute over NOW's potential liability for the particular products CLP purchased and tested. NOW insists that, in 2018, it was not selling the SimplyOne vitamin products that CLP tested. Instead, NOW states that sometime after CLP performed its testing in 2018, NOW purchased certain assets—but not liabilities—from the company that produced the relevant SimplyOne products. Def.'s Mot. to Dismiss at 2 n.2. The Court cannot determine NOW's ultimate liability for the products CLP purchased in 2018 because it lacks jurisdiction to address the merits of this case.

properly formulated, free of contaminants, and superior to competing products, when in fact they were under-formulated for folic acid and contaminated with lead, cadmium, and mercury. Am. Compl. ¶¶ 137–59. Further, CLP alleges that the under-formulation of folic acid and the presence of heavy metals render NOW's prenatal vitamins "adulterated" in violation of D.C. Code § 48-103. Id. ¶ 150. That provision defines as adulterated food products such as vitamins and dietary supplements that "contain[] any poisonous or deleterious substance which may render [a product] injurious to health," or from which "[a]ny valuable constituent has been omitted or abstracted." D.C. Code § 48-103(2)(A), (J). CLP's amended complaint seeks: (1) a declaration that NOW's conduct violates the DCCPPA; (2) an order enjoining that conduct; (3) an order requiring NOW "to provide corrective advertising to the residents of the District of Columbia"; and (4) an order granting CLP's "costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law." Am. Compl. at 30.

On January 4, 2021, NOW filed a timely notice of removal asserting that this Court has both diversity jurisdiction under 28 U.S.C. § 1332(a) and federal question jurisdiction under 28 U.S.C. § 1331. Def.'s Notice of Removal ("Def.'s Notice") [ECF No. 1] at 1. Shortly thereafter, NOW filed a motion to dismiss in this Court arguing that CLP lacked standing and that its DCCPPA claims are preempted by federal law. Def.'s Mot. to Dismiss at 1. CLP responded to the motion to dismiss, Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss [ECF No. 9], and moved to remand the action to D.C. Superior Court for lack of subject-matter jurisdiction, Pl.'s Mot. to Remand [ECF No. 11]. CLP's motion to remand insists that the amount in controversy is under $75,000 and thus insufficient to establish diversity jurisdiction, and asserts that its DCCPPA claim does not necessarily raise an issue of federal law. Id. at 4, 9.

3

**Legal Standard**

An action originally filed in state court "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," when it falls within the federal court's original jurisdiction. 28 U.S.C. § 1441(a). Because of the significant federalism concerns involved, this Court strictly construes the scope of its removal jurisdiction. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 107–09 (1941); see also Bhagwanani v. Howard Univ., 355 F. Supp. 2d 294, 297 (D.D.C. 2005); Johnson-Brown v. 2200 M Street LLC, 257 F. Supp. 2d 175, 177 (D.D.C. 2003).

When removal is challenged in a motion to remand, the party seeking to remain in federal court bears the burden of establishing federal jurisdiction. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); Bhagwanani, 355 F. Supp. 2d at 297; In re Tobacco/Gov'tal Health Care Costs Litig., 100 F. Supp. 2d 31, 35 (D.D.C. 2000). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case." Republic of Venez. v. Philip Morris Inc., 287 F.3d 192, 196 (D.C. Cir. 2002) (emphasis added); see also Bhagwanani, 355 F. Supp. 2d at 297. And "the court must resolve any ambiguities concerning the propriety of removal in favor of remand." Johnson-Brown, 257 F. Supp. 2d at 177.

**Discussion**

**I.    Diversity Jurisdiction**

A federal court has diversity jurisdiction over an action when the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between "citizens of different states." 28 U.S.C. § 1332(a). CLP and NOW agree, and the Court finds, that the parties are completely diverse: CLP is a citizen of Colorado, and NOW is a citizen of Illinois. Def.'s Notice

¶ 12; Pl.'s Mot. to Remand at 4. CLP, however, disputes NOW's assertion that the amount-in-controversy requirement has been met. Pl.'s Mot. to Remand at 4.

When a plaintiff contests a defendant's assertion regarding the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 28 U.S.C. § 1446(c)(2)(B); Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 88 (2014). Despite the clear language of Section 1446(c)(2)(B) and the Supreme Court's decision in Dart Cherokee, there is some disagreement among the parties as to the proper evidentiary standard for assessing the amount in controversy. CLP cites Lowdermilk v. U.S. Bank Nat'l Ass'n, 479 F.3d 994 (9th Cir. 2007), a Ninth Circuit case predating Dart Cherokee, for the proposition that the defendant must establish "to a legal certainty" that the amount in controversy is met. Pl.'s Mot. to Remand at 4 (citing Lowdermilk, 479 F.3d at 999). But the Ninth Circuit has since recognized that Lowdermilk's legal-certainty standard is incompatible with Dart Cherokee. See Arias v. Residence Inn by Marriot, 936 F.3d 920, 922 (9th Cir. 2019). And courts in this District have specifically rejected the use of a legal-certainty standard. See, e.g., Breathe DC v. Santa Fe Nat. Tobacco Co., 232 F. Supp. 3d 163, 170 (D.D.C. 2017); M3 USA Corp. v. Haunert, No. 20-cv-3784 (DLF), 2021 WL 1894847, at *1 n.1 (D.D.C. May 11, 2021). Nevertheless, CLP's mistaken citation of the now-obsolete Lowdermilk standard does not doom its motion to remand; even applying the correct preponderance-of-the-evidence standard, NOW has not met its burden to establish that the amount in controversy is met.

NOW's theory of diversity jurisdiction erroneously relies on aggregating the total value of its costs to comply with all relief sought by CLP to meet the $75,000 amount-in-controversy requirement. NOW's position is inconsistent with the so-called "non-aggregation principle," grounded in the Supreme Court's holding that "the separate and distinct claims of two or more

5

plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement" except when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." Snyder v. Harris, 394 U.S. 332, 335 (1969); Zahn v. Int'l Paper Co., 414 U.S. 291, 294 (1973). Courts in this District have applied this non-aggregation principle in DCCPPA cases, even "when separate and distinct claims are asserted on behalf of a number of individuals" in "a representative action." Breakman v. AOL LLC, 545 F. Supp. 2d 96, 103 (D.D.C. 2008) (internal citations omitted); see also Breathe DC, 232 F. Supp. 3d at 171; Nat'l Consumers League v. Flowers Bakeries, LLC, 36 F. Supp. 3d 26, 32 (D.D.C. 2014). In this case, then, only the relief to which CLP would be individually entitled—not whatever might accrue on behalf of the public CLP purports to represent in pressing its claims—counts toward satisfying the $75,000 jurisdictional threshold. See Breakman, 545 F. Supp. 2d at 103–04. And the non-aggregation principle applies across all forms of relief that CLP may recover under the DCCPPA, namely, injunctive relief, statutory damages, and attorneys' and expert fees. See Zuckman v. Monster Beverage Corp., 958 F. Supp. 2d 293, 297 (D.D.C. 2013).

Hence, the Court will attempt to value each of these forms of relief—as they would accrue to CLP individually—and add them together for the purpose of calculating the amount in controversy. Id. However, the Court will only consider values supported by evidence in the record and will not count claimed amounts based solely on unsupported assertions or speculation. See, e.g., Wexler v. United Air Lines, Inc., 496 F. Supp. 2d 150, 154 (D.D.C. 2007) ("[A] nonexistent evidentiary showing is insufficient to meet [defendant's] burden to establish the existence of federal subject matter jurisdiction.").

A. <u>Injunctive Relief</u>

CLP's complaint seeks "[a]n Order enjoining Defendant's conduct found to be in violation of the D.C. CPPA" and "requiring Defendant to provide corrective advertising to the residents of the District of Columbia that restores consumers." Am. Compl. at 30. NOW argues that the total cost of complying with this requested injunctive relief would exceed $75,000, thereby meeting the amount-in-controversy requirement. Def.'s Notice ¶ 15. CLP responds that "considering the total cost to the Defendant of complying with [the requested injunctive] relief would violate the non-aggregation principle," and that, for the purpose of calculating the amount in controversy, defendant's cost of compliance should be "divided among the beneficiaries of the injunction." Pl.'s Mot. to Remand at 6 (citing, inter alia, <u>Breathe DC</u>, 232 F. Supp. 3d at 171).

To be sure, the D.C. Circuit has held that courts may consider the cost to the defendant of complying with an injunction when determining the amount in controversy. See, e.g., <u>Tatum v. Laird</u>, 444 F.2d 947, 951 n.6 (D.C. Cir. 1971), <u>rev'd on other grounds</u>, 408 U.S. 1 (1972). Indeed, NOW cites a number of cases from within this Circuit where the cost-to-defendant test was employed to calculate the amount in controversy, Def.'s Opp'n at 3, but none of those cases grapples with the non-aggregation principle, and none compels this Court to apply the cost-to-defendant test here. For example, three of the cases NOW cites dealt with the now-abolished amount-in-controversy requirement in federal question cases, which do not implicate the federalism concerns raised by diversity jurisdiction. See <u>Smith v. Washington</u>, 593 F.2d 1097, 1099 (D.C. Cir. 1978) (acknowledging federal-question jurisdiction over constitutional claims on finding it was "possible to determine that it is not legally certain that plaintiffs' claim is worth less than" jurisdictional threshold); <u>Nat'l Welfare Rights Org. v. Weinberger</u>, 377 F. Supp. 861, 866 (D.D.C. 1974) (similar); <u>Tatum</u>, 444 F.2d at 950–51 (acknowledging federal-question jurisdiction

over "a challenge to a claimed deprivation of fundamental constitutional rights of intangible value" when cost of injunction to defendant "might well exceed" jurisdictional threshold). Another involved the cost to a defendant of complying with an injunction sought for the benefit of a single plaintiff, so non-aggregation was not an issue. See GEO Specialty Chems., Inc. v. Husisian, 951 F. Supp. 2d 32, 40–41 (D.D.C. 2013) (considering cost to an attorney and his law firm of injunction preventing him from representing a former client's competitors).[2]

In apposite circumstances to those present here, the D.C. Circuit has acknowledged a "possible conflict" it has "not attempt[ed] to resolve" between the cost-to-defendant test and the non-aggregation principle announced by the Supreme Court in Snyder and Zahn. Fenster v. Schneider, 636 F.2d 765, 767 n.1 (D.C. Cir. 1980). Meanwhile, as explained above, this Court and several others in this District have resolved this conflict in favor of non-aggregation when DCCPPA plaintiffs seek injunctive relief that purports to benefit others or the public at large, first considering the cost to the defendant of complying with an injunction and then apportioning that cost among the injunction's beneficiaries. See Breakman, 545 F. Supp. 2d at 106 (were cost-to-defendant test appropriate to calculate value of injunction, only the portion of the cost running to each D.C. consumer would count toward establishing amount in controversy); see also Animal Legal Def. Fund v. Hormel Food Corp., 249 F. Supp. 3d 53, 60 (D.D.C. 2017) ("[T]he cost of compliance that a court should consider when determining the amount in controversy is the total amount divided among the beneficiaries of the injunction."); Breathe DC, 232 F. Supp. 3d at 171 (same); Witte v. Gen. Nutrition Corp., 104 F. Supp. 3d 1, 6 (D.D.C. 2015) (same); Flowers

---

[2] The final case marshalled by NOW to support the use of the cost-to-defendant test actually cuts against NOW's argument, but on different grounds. See Wexler, 496 F. Supp. 2d at 154 (noting cost-to-defendant test in passing but remanding because merely submitting a "list of obligations [defendant] would be required to undertake" pursuant to the requested injunction with "no evidentiary support for the cost of each" was "insufficient to meet [defendant's] burden").

Bakeries, 36 F. Supp. 3d at 32 (same); Nat'l Consumers League v. Gen. Mills, Inc., 680 F. Supp. 2d 132, 140 (D.D.C. 2010) (same).

The disaggregation of injunctive costs in DCCPPA actions follows logically from the fact that representative actions for injunctive relief brought under the DCCPPA are not seeking to enforce a "common and undivided interest" as would exempt them from non-aggregation under Snyder. In this District, "[t]he key question courts consider with respect to aggregation is not whether an injunction would cost Defendant more or less depending on the number of beneficiaries, but instead whether Plaintiff and the members of the general public have separate and distinct claims that could be brought independently against Defendant with respect to the challenged conduct." Animal Legal Def. Fund, 249 F. Supp. 3d at 61–62. And here, "any individual who [saw] Defendant's marketing . . . could bring a CPPA suit on the same grounds advanced by [CLP]." Food & Water Watch, Inc. v. Tyson Foods, Inc., 2020 WL 1065553, at *4 (D.D.C. Mar. 5, 2020). Opening a federal forum to all such consumers simply because the defendant would incur hefty hypothetical corrective advertising costs "would 'be contrary to the longstanding directive that federal jurisdiction should be strictly interpreted.'" Id. at *5 (quoting Breakman, 545 F. Supp. 2d at 105).

Hence, to meet the amount-in-controversy requirement, defendants are required to make a showing "that the costs of the injunction that run to each plaintiff individually exceed the jurisdictional amount." Witte, 104 F. Supp. 3d at 6. When a "[d]efendant makes no effort to demonstrate that the pro rata portion of its compliance costs attributable to [the] [p]laintiff would nearly approach the jurisdictional threshold," the defendant has not met its burden. Animal Legal Def. Fund, 249 F. Supp. 3d at 62.

NOW fails to acknowledge this burden, arguing that the non-aggregation principle does not apply "[w]hen the defendant would incur costs over $75,000" in complying with an injunction, "no matter how many plaintiffs assert claims." Def.'s Opp'n to Pl.'s Mot. to Remand ("Def.'s Opp'n") [ECF No. 14] at 5. Because the cost of the injunctive relief that CLP seeks—an order enjoining NOW's conduct and mandating corrective advertising—would be fixed regardless of the number of plaintiffs who join the lawsuit, NOW maintains that CLP shares a "common and undivided interest" with the general public and the consumers it represents. Id. (quoting Snyder, 394 U.S. at 335).

NOW cites only one DCCPPA case from this District which held that the amount-in-controversy requirement was met. See Def.'s Opp'n at 6–7 (citing Organic Consumers Ass'n v. Hain Celestial Grp., 285 F. Supp. 3d 100, 101–02 & n.2 (D.D.C. 2018)). But the plaintiff there did not contest removal; the only motion before the court was the defendant's motion to dismiss, and the court simply cited the defendant's notice of removal without further analysis to substantiate the amount in controversy. See Hain Celestial, 285 F. Supp. 3d at 101–02 & n.2. A conclusory finding in a footnote that the amount-in-controversy requirement was satisfied is not persuasive here.[3]

Otherwise, aside from the cost-to-defendant cases distinguished above, NOW relies almost exclusively on cases from outside this Circuit to support its position that its total cost of compliance alone is sufficient to invoke federal jurisdiction. See Def.'s Opp'n at 5–6. But in each of these additional cost-to-defendant cases NOW cites, the defendant cleared the jurisdictional threshold by "show[ing] that its costs of compliance running to any single Plaintiff or putative class member

---

[3] The court in Hain Celestial also found that it had federal question jurisdiction, diminishing the importance of its cursory amount-in-controversy finding even further. See 285 F. Supp. 3d at 102 n.2

would exceed $75,000." Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 898 (10th Cir. 2006) (emphasis added); see also In re Microsoft Corp. Antitrust Litig., 127 F. Supp. 2d 702, 719 (D. Md. 2001) ("Microsoft has established that redesigning its operating system software in order to comply with the injunctions requested in each of the removed cases would cost millions of dollars."); Katz v. Warner-Lambert Co., 9 F. Supp. 2d 363, 365 (S.D.N.Y. 1998) ("It is conceded that more than $75,000 must be expended to fund the [injunctive relief] here requested."); In re Cardizem CD Antitrust Litig., 90 F. Supp. 2d 819, 835–36 (E.D. Mich. 1999) ("Defendants have presented evidence that the cost of compliance with the requested injunction will exceed the amount in controversy threshold."); Schweinfurth v. Motorola, Inc., No. 1:05CV024, 2005 WL 2233258, at *3 (N.D. Ohio Sept. 9, 2005) (same); Hoffman v. Vulcan Materials, Co., 19 F. Supp. 2d 475, 482–83 (M.D.N.C. 1998) (same). NOW has made no such showing here.[4]

Even if NOW were correct that the non-aggregation principle does not apply in this context, then, NOW cannot establish that the cost of complying with CLP's requested injunction would be above $75,000. It is well-established that courts may not rely on a defendant's speculative claims that the amount-in-controversy requirement is met. For example, in Zuckman, this Court explained that "general assertions that the cost of injunctive relief would exceed $75,000 are too speculative to establish diversity jurisdiction." 958 F. Supp. 2d at 302; see also Inst. for Truth in Mktg. v. Total Health Network Corp., 321 F. Supp. 3d 76, 90–91 (D.D.C. 2018) (granting motion

---

[4] NOW's invocation of the Supreme Court's decision in Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546 (2005), fares no better. NOW cites Exxon's holding that "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs." Def.'s Opp'n at 6 (quoting Exxon, 545 U.S. at 549). But this passage makes clear that Exxon addresses whether a court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over additional plaintiffs—who do not individually meet the amount-in-controversy requirement—seeking to join a matter in which the court already has subject-matter jurisdiction over the original plaintiff. NOW's burden in this case is to establish this Court's original jurisdiction under 28 U.S.C. § 1332(a), to which Exxon is irrelevant.

11

to remand where defendant offered no evidence to establish that the cost of complying with an injunction was enough to push the amount in controversy above $75,000); Wexler, 496 F. Supp. 2d at 154 (same). Here, NOW asserts that complying with "[a]n injunction to remove any violative [p]roducts from the market . . . along with required corrective advertising, would necessarily be expensive and exceed the amount in controversy threshold." Def.'s Opp'n at 3–4. It contends that because "NOW sells product across the United States" the cost of injunctive relief "would not be limited to the District of Columbia." Id. at 4. But beyond these general assertions, NOW does not provide any information about how many potentially violative products it has on the market, the cost of pulling each product from the market, or the cost of implementing corrective advertising, let alone substantiate such cost estimates through affidavits or other evidence. See Wexler, 496 F. Supp. 2d at 154 (rejecting defendant's bare assertion without "supporting declarations or affidavits from its employees, who would undoubtedly be in a position to estimate such costs"). With so little information, the Court has no basis to assess the cost of injunctive relief to NOW, even before apportioning.

Hence, because NOW has provided no evidence to substantiate its assertion that the cost of complying with an injunction would exceed $75,000 in total, let alone per beneficiary as required under the non-aggregation principle, the Court finds that the cost of complying with injunctive relief does not satisfy the amount-in-controversy requirement.

B.  Statutory Damages

Any statutory damages that CLP would be entitled to under the DCCPPA are also insufficient for establishing the amount-in-controversy requirement. The DCCPPA provides for the payment of "[t]reble damages or $1,500 per violation, whichever is greater." D.C. Code § 28-3905(k)(2)(A)(i). As NOW points out, it would take only fifty violations to add up to $75,000 in

statutory damages, and it is safe to assume that at least fifty of the allegedly violative labels made it into circulation in the District of Columbia. Def.'s Opp'n at 5. But CLP's amended complaint does not explicitly seek statutory damages. Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Remand ("Pl.'s Reply") [ECF No. 16] at 4. This Court's calculation of the amount in controversy logically only encompasses those forms of relief sought by plaintiff. See Zuckman, 958 F. Supp. 2d at 297–98; see also Animal Legal Def. Fund, 249 F. Supp. 3d at 59–63 (addressing only cost of injunctive relief and attorneys' fees where plaintiff did not seek statutory damages); Organic Consumers Ass'n v. R.C. Bigelow, Inc., 314 F. Supp. 3d 344, 348–55 (D.D.C. 2018) (same).

In any event, under the non-aggregation principle, the amount in controversy for a DCCPPA case only includes statutory damages arising from the purchases for which the lead plaintiff asserts claims. Zuckman, 958 F. Supp. 2d at 297–98. CLP represents that it purchased only three units of NOW's products, each of which costs between $8.03 and $22.77. See Pl.'s Reply at 2 n.2. Given the resultantly low treble damages amount, the maximum potential statutory damage award CLP could claim would be "$1,500 x 3 (units) = $4,500." Id. Therefore, even if CLP were to seek statutory damages—which it has so far chosen not to do—the potential award would fall far below the amount-in-controversy requirement. NOW's argument to the contrary relies on the aggregation of all potential statutory damages that might accrue to unnamed beneficiaries of CLP's action and therefore fails for reasons already discussed at length above.

C. Attorneys' and Expert Fees

"Attorney fees are part of the amount in controversy if they are provided for by statute or contract." Zuckman, 958 F. Supp. 2d at 301. The DCCPPA does provide for reasonable attorneys' fees, D.C. Code § 28-3905(k)(2)(B), and CLP seeks "reasonable attorneys' fees and expert fees" as part of its prayer for relief, Am. Compl. at 30. NOW argues that, based on attorneys' fees in

other DCCPPA and consumer protection matters, CLP stands to win a fee award that is reasonably likely to exceed $75,000 if it prevails at trial. Def.'s Notice ¶ 17. NOW also asserts that because "CLP's case will involve expert witnesses" "[t]he cost of such experts would push the amount in controversy [even further] above $75,000. Id. ¶ 18. To support this argument, NOW cites Beck v. Test Masters Educational Services, Inc., a DCCPPA case in which the plaintiff won an award of $927,707.89 for attorneys' fees, expenses, and costs. See 73 F. Supp. 3d 12, 20 (D.D.C. 2014); see also Def.'s Notice ¶ 17.

Once again, NOW's argument wrongly presupposes that the entire sum of CLP's legal fees plus its expert fees count toward the amount in controversy notwithstanding the non-aggregation principle. But the non-aggregation principle applies to awards of costs and fees as well. Zuckman, 958 F. Supp. 2d at 301; see also, e.g., Animal Legal Def. Fund, 249 F. Supp. 3d at 62 ("[C]onsidering the total amount of attorneys' fees in a DCCPPA case brought on behalf of the general public would not comport with the non-aggregation principle."); Nat'l Consumers League v. Bimbo Bakeries USA, 46 F. Supp. 3d 64, 73 (D.D.C. 2014) (noting "a body of jurisprudence" in this District that "reject[s] the usual aggregation of statutory attorneys' fees and include[s] them only on a pro rata basis"); Gen. Mills, 680 F. Supp. 2d at 141 ("[A]ggregation of attorneys' fees is not appropriate in a [DC]CPPA case."). Hence, in order to establish that the amount in controversy meets the jurisdictional threshold, NOW must demonstrate that the pro rata amount of attorneys' and expert fees that would be attributable to CLP as a member of the general public would exceed $75,000. Animal Legal Def. Fund, 249 F. Supp. 3d at 62. NOW does not even attempt to distinguish cases where fees were disaggregated, let alone make a showing regarding CLP's pro rata share of any potential fee award.

Even if this Court could count the total amount of fees accruing to CLP towards the amount in controversy, NOW has once again fallen short of its evidentiary burden to demonstrate that the amount would exceed $75,000. Courts in this District have repeatedly rejected "attempts to create federal jurisdiction through speculative assertions as to the potential award of attorneys' fees." Id. at 63 (citing Bimbo Bakeries, 46 F. Supp. 3d at 74; Breakman, 545 F. Supp. 2d at 107; Your Girl Friday, LLC v. MGF Holdings, Inc., No. CIV.A. 06-0385 (ESH), 2006 WL 1028959, at *2 (D.D.C. Apr. 18, 2006)). A citation to the fee award in one prior DCCPPA case, plus NOW's conclusory assertion that "[t]here is no rational basis to conclude that [CLP's litigation] expenses would be less than $75,000," Def.'s Opp'n at 4, is too speculative to form a sufficient basis for establishing diversity jurisdiction in this matter even setting aside the non-aggregation principle. The Court therefore concludes that attorneys' and expert fees are insufficient to satisfy the amount-in-controversy requirement.

\*     \*     \*     \*     \*

In sum, NOW has not met its burden to establish that the amount in controversy here exceeds $75,000 as required by statute. It has offered only unsupported assertions that its cost of complying with the requested injunctive relief and the fee award to which CLP may ultimately be entitled exceed the jurisdictional threshold, and—in reliance on out-of-circuit caselaw—insisted against the weight of relevant authority that the non-aggregation principle does not apply to CLP's DCCPPA claims. Hence, this Court lacks diversity jurisdiction under 28 U.S.C. § 1332 over this dispute.

## II.    Federal Question Jurisdiction

NOW next argues that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Def.'s Notice at 1. According to NOW, because "the federal government, through the

Food and Drug Administration ('FDA'), is charged with regulating the sale of prenatal vitamins and their labeling," CLP's causes of action arise under federal law. Id. ¶ 24. Although the DCCPPA is a D.C. statute, the Supreme Court has held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313–14 (2005)). Under Gunn and Grable's first prong, a federal issue that may be raised in defending a claim is not "necessarily raised." Organic Consumers Ass'n v. Gen. Mills, Inc., 235 F. Supp. 3d 226, 230 (D.D.C. 2017) (citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). Indeed, the Supreme Court has made clear that state-law claims "arising under" federal law for purposes of Section 1331 constitute "a 'special and small category.'" Gunn, 568 U.S. at 258 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)).

NOW argues that this action necessarily raises a federal issue because it implicates the FDA's regulatory standards. The Food, Drug, and Cosmetic Act ("FDCA") gives the FDA authority to determine both when a dietary supplement "shall be deemed to be adulterated," 21 U.S.C. §342(f) & (g), and when food labeling is "false or misleading," id. § 343(a). For its part, CLP rests its assertion that NOW's products are adulterated on D.C. Code § 48-103, but, as NOW points out, that state-law provision "merely copies the federal standard." Def.'s Notice ¶ 24. Accordingly, NOW maintains that "a court will necessarily have to rely on and apply FDA's statutory and regulatory scheme and standards for adulteration," and "for labeling, marketing, and advertising." Id. ¶¶ 24–25. CLP responds that the applicable FDA regulations "are simply one available factor the Court can take into consideration in determining the degree to which Defendant

has engaged in deceptive and misleading marketing practices" under the DCCPPA.  Pl.'s Mot. to Remand at 9.

The Court agrees with CLP.  Although NOW is not wrong in stating that the FDA sets standards for determining when a product is adulterated, the issue whether NOW complies with these standards is not "necessarily raised" by CLP's DCCPPA claims.  Instead, CLP asserts that the under-formulation of folic acid and the presence of heavy metals render NOW's marketing false and deceptive, constituting unlawful trade practices under the DCCPPA.  Pl.'s Reply at 10–11.  CLP alleges that NOW violated the DCCPPA not because its products fail to comply with FDA standards, but rather because NOW inaccurately labels and advertises its products as superior prenatal vitamins.  Am. Compl. ¶ 149.  Perhaps the federal standard for adulteration could serve as a reference to proving CLP's claims, but "it takes more than a federal element 'to open the "arising under" door.'"  Empire Healthchoice, 547 U.S. at 701 (quoting Grable, 545 U.S. at 313). The only respect in which FDA regulations are certain to make an appearance in this litigation is as a potential defense.  Indeed, NOW has already argued in its motion to dismiss that CLP's claims are preempted by federal law.  See Def.'s Mot. to Dismiss at 1.  But "a 'federal defense, including the defense of preemption,' does not suffice to create federal question jurisdiction."  Gen. Mills, 235 F. Supp. 3d at 230 (quoting Caterpillar, 482 U.S. at 392).

If NOW were correct that this Court's analysis of CLP's claims necessarily hinges on the FDCA and its implementing regulations, nearly every DCCPPA claim could be brought in federal court.  But as has been discussed at length above, nearly every DCCPA claim for which removal to federal court has been challenged has been remanded to D.C. Superior Court, including under circumstances comparable to those present here.  For example, in General Mills, plaintiffs challenged defendants' marketing of certain food products as "natural" and "healthy" because

17

those products contained the pesticide glyphosate. Gen. Mills, 235 F. Supp. 3d at 228. Although the court acknowledged that the Environmental Protection Agency had established regulations governing acceptable levels of glyphosate residues in food crops, those regulations "at most . . . are potentially relevant as a defense, but that does not provide federal question jurisdiction." Id. at 232; see also R.C. Bigelow, 314 F. Supp. 3d at 357–58 (holding that regulations over food labeling were relevant as a federal defense and were not necessarily raised by DCCPPA challenge); Animal Legal Def. Fund, 249 F. Supp. 3d at 58 (same regarding federal meat labelling and packaging regulations). Likewise here: although FDA regulations govern the formulation, labeling, and advertising of prenatal vitamins, those regulations are relevant only as a defense and are not "necessarily raised" by CLP's claims.

Even assuming, arguendo, that the issue whether NOW's products were "adulterated" under FDA regulations was necessarily raised here, it would not constitute a "substantial" issue as defined in Grable and Gunn. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit"; rather, "[t]he substantiality inquiry under Grable looks . . . to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. NOW does not—and could not possibly—cite any caselaw in support of its assertion that the application of the provisions of the FDCA and FDA regulations here is important to the federal system; it is not. Indeed, "Congress did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs in the 1938 [FDCA] or in any subsequent amendment" because "[e]vidently, it determined that widely available state rights of action provided appropriate relief for injured consumers." Wyeth v. Levine, 555 U.S. 555, 574 (2009). This determination, in turn, "is tantamount to a congressional conclusion that the presence of a claimed violation of the [FDCA] as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."

18

Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 814 (1986); see also Total Health Network, 321 F. Supp. 3d at 88 ("[I]n circumstances such as the one presented here (i.e., where the District of Columbia has essentially provided a cause of action for the enforcement of a federal duty that Congress did not wish to have privately enforced) it would be unmistakably disruptive to Congress's intent to open the backdoor to the federal courts and allow what would likely be a flood of state-law litigation regarding all sorts of otherwise unenforceable federal standards under the courts' 'arising under' jurisdiction.").

NOW once again resorts to Hain Celestial, the lone DCCPPA case in which a court found federal question jurisdiction under Grable. See Def.'s Notice ¶ 24 (citing 285 F. Supp. 3d at 102 n.2). But again, the plaintiff there did not contest removal, and the court's finding that the Grable elements were satisfied was contained in a footnote with no supporting analysis or explanation. Hain Celestial thus gives this Court no reason to doubt the clear weight of authority discussed above. Hence, because CLP's state-law claims under the DCCPPA do not necessarily raise a substantial federal issue, the Court does not have federal question jurisdiction over this action.

## Conclusion

For the foregoing reasons, the Court concludes it lacks subject-matter jurisdiction over this case. The Court will, therefore, grant CLP's motion to remand and deny NOW's motion to dismiss as moot. A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 6, 2021